CLEVELAND and others, Executors, vs. HOPKINS, imp.

*September 4 — September 19, 1882.*

ATTORNEY AT LAW. *(1) Unauthorized appearance.*
VACATING JUDGMENT. *(2) Exercise of discretion not interfered with.*
*(3, 4) Abuse of discretion.*

[1. The effect of the unauthorized appearance of an attorney in behalf of a party, somewhat considered.]

2. Where the circuit court has exercised the discretion vested in it by sec. 2832, R. S., this court will not interfere unless there has been a manifest abuse of such discretion. *Smith v. Smith,* 51 Wis., 668.

3. But such discretion must be a legal discretion, and where an application, made in time, presents a case within the statute and is accompanied by a verified answer alleging a good defense on the merits, it is a manifest abuse of discretion not to open the judgment upon reasonable terms.

4. So, where it appears that a defendant knew nothing of an action until he saw in the newspapers an account of the entry of the judgment, and that the attorneys who appeared for him in the action did so inadvertently and without authority from him, it is *held* that an application to set aside the judgment, made within two months after the entry thereof and accompanied by an affidavit of merits and a verified answer alleging a perfect defense on the merits, should have been granted, and an order denying the same is reversed.

APPEAL from the Circuit Court for *Milwaukee* County.

This action was commenced April 3, 1862, by the service of the summons upon the Marine Bank and certain alleged stockholders of the bank, including the appellant. The sheriff's return was to the effect that he had served the summons upon certain defendants named, including the appellant, by leaving a copy thereof at their several and usual places of abode (they not being found), with members of their respective families, persons of suitable age and discretion, to whom he stated the contents thereof. The complaint alleged that *Hopkins* owned $900 stock in the bank. April 27, 1869, the court ordered and adjudged that the bank had

surrendered its corporate rights, privileges, and franchises, and that the same be dissolved; and thereupon the court referred the cause to Samuel M. Dixon, Esq., to examine and report as to certain matters, including the names of the stockholders.   November 19, 1880, upon what appears to be the consent of the attorneys for the respective parties, and the request of the referee, the . court appointed Hugh Ryan, Esq., as referee in place of Dixon.   October 19, 1881, the referee so appointed made his report, which was· confirmed by the court and judgment entered thereon November 21, 1881.   December 31, 1881, the court, upon ·affidavits and a proposed answer, verified by said appellant, granted an order to show cause why the judgment should not be set aside as to the appellant, and he allowed to file such answer in the cause.   The order to show cause was met by opposing affidavits, and, after being argued by the respective counsel and taken under advisement, was finally denied by the court May 25, 1882, and from the order entered thereon this appeal is brought.   [See *Cleveland v. Burnham, post,*·p. 598.]

For the appellant there were briefs by *Winfield & A. A. L. Smith,* and oral argument by *Mr. Winfield Smith.*

For the respondents there was a brief by *E. Mariner* and *Geo. H. Noyes,* and oral argument by *Mr. Noyes.*

CASSODAY, J.   There is no claim that the summons was personally served, nor that the appellant had any personal knowledge of the pendency or existence of the suit until after the entry of judgment. . The name of the person with whom the summons was left does not appear.   It does state that it was left with a member of his family, but this would seem to be a mere conclusion of the officer making the return. *Johnson v. Curtis,* 51 Wis., 597.   By naming or describing the person with whom the summons was left, it might be made to appear that such person was not at the time a member of the appellant's family.   However this may be, it is

AUGUST TERM, 1882.                389

Cleveland and others, Ex'rs, vs. Hopkins, imp.

manifest from the affidavits that the appellant never had any notice of the suit, much less that he ever authorized any one to appear for him in the case. About the time of the commencement of the suit the president of the bank retained the firm of Butler, Buttrick & Cottrill as attorneys for the bank, and directed them to appear as attorneys for certain of the defendants therein, including the appellant, an alleged stockholder. But it does not appear that the president of the bank had any authority from *Hopkins* to give any such direction as to him. On the contrary, it appears from his testimony and affidavit that he knew nothing of such a suit until he saw in the newspapers an account of the entry of the judgment. If he knew nothing of the suit, then he had no occasion to employ attorneys to defend the same. Moreover, Mr. Butler and Mr. Cottrill, who seems to have had charge of the case on the part of the bank and other defendants, both disclaim any authority *from Hopkins* to appear in his behalf. Such being the facts, was the unauthorized and undoubtedly inadvertent appearance of Butler, Buttrick & Cottrill in behalf of *Hopkins* conclusive upon the latter? Undoubtedly many conflicting opinions can be found in the books upon this question.

In *Am. Ins. Co. v. Oakley*, 9 Paige, 498, cited by counsel for the respondent, Chancellor WALWORTH states the rule thus: " As a general rule, when a suit is commenced or defended, or any other proceeding is had therein, by one of the regular licensed solicitors, it is not the practice of the court to inquire into his authority to appear for his supposed client. But if the party for whom such solicitor appears, or assumes to act, denies his authority and applies to the court for the relief *before the adverse party has acquired any rights or suffered any prejudice* in consequence of the acts of the solicitors, the court may correct the proceeding, and may compel the solicitor who has assumed to act without authority to pay the costs to which the parties have been sub-

jected in consequence of his improper interference. *Wright v. Castle*, 3 Mer., 12; *French v. French*, 4 Law Rec. (N. S.), 123; *Lord v. Kellett*, 2 Mylne & K., 1. In cases, however, where the adverse party has acquired rights, or been subjected to costs by proceedings in the name of a party who afterwards denies the authority of the attorney or solicitor who has thus proceeded, the courts are in the habit of permitting the proceedings to stand where the solicitor or attorney is a responsible man, and leaving the party injured by such unauthorized proceedings in his name to seek his redress against such solicitor or attorney by a summary application to the court or otherwise. *Dundas v. Dutens*, 1 Ves. Jr., 196; *Denton v. Noyes*, 6 Johns., 297; *Cox v. Nicholls*, 2 Yeates, 547; *Ex parte Stuckey*, 2 Cox Cas., 283."

Here it would seem that the application to the court was "before the adverse party had acquired any rights or suffered any prejudice in consequence of the acts of the solicitors." In this state, however, the question has been somewhat simplified by the statute, which provides that "the court, or a judge, may likewise, in discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding against him, through his mistake, inadvertence, surprise, or excusable neglect," etc. Sec. 2832, R. S. (sec. 38, ch. 125, R. S. 1858). Where the circuit court has exercised the discretion thus vested, it has frequently been held that "this court will not interfere unless there has been a manifest abuse of such discretion." *Smith v. Smith*, 51 Wis., 668, and cases there cited. But it has also been frequently held, in effect, that such discretion must be a legal discretion, and where the application is made in time, and presents a case of "mistake, inadvertence, surprise, or excusable neglect," accompanied by a verified answer alleging a good defense on the merits, it is a manifest abuse of discretion not to open the judgment upon reasonable terms.

Cleveland and others, Ex'rs, vs. Hopkins, imp.

*Johnson v. Eldred*, 13 Wis., 482; *Butler v. Mitchell*, 15 Wis., 355; *S. C.*, 17 Wis., 54; *Hanson v. Michelson*, 19 Wis., 498.

Such is the rule even where attorneys have appeared in the case by authority, and the reasons for holding the same way are manifestly stronger where they have appeared without authority. Here the motion was made within two months after the entry of the judgment, and hence the criticism of some of the above cases in *McKnight v. Livingston,* 46 Wis., 356, is not applicable. As the motion papers were accompanied by an affidavit of merits, it is unnecessary to consider the question of its necessity. See *Levy v. Goldberg*, 40 Wis., 315; *Town of Omro v. Ward*, 19 Wis., 232. The motion was also accompanied by a verified answer, denying that he had ever at any time been a stockholder in the defendant bank, and alleging that he had never owned or held any stock whatever in the defendant bank. Since the defendant *Hopkins* was sought to be made liable solely on the ground that he was such stockholder, the answer, if true, would seem to present a perfect defense upon the merits. Without going further into details, we are clearly of the opinion that the motion papers brought the case within the provisions of the statute quoted, and hence the motion should have been granted.

For the reasons given the order of the circuit court denying the motion of the defendant *Hopkins* must be reversed, and the cause remanded for further proceedings according to law.

*By the Court.*— It is so ordered.