Corey W. HUSSEY, Plaintiff-Appellant,

v.

OUTAGAMIE COUNTY, Defendant-Respondent.

Court of Appeals

*No. 95–2948. Submitted on briefs February 26, 1996.—Decided March 12, 1996.*

(Also reported in 548 N.W.2d 848.)

On behalf of plaintiff-appellant, the cause was submitted on the briefs of *Frederick J. Mohr* of *Frederick J. Mohr, S.C.* of Green Bay.

On behalf of defendant-respondent, the cause was submitted on the brief of *Anna M. Pepelnjak* and *Michele M. Ford* of *Crivillo, Carlson, Mentkowski & Steeves, S.C.* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.  Corey Hussey appeals a summary judgment dismissing his complaint against Outagamie County. Hussey sought a permanent injunction prohibiting the County from discharging him as a deputy sheriff until the County complied with the procedures contained in § 59.21(8)(b), STATS.[1] The circuit court dismissed the complaint on the grounds that Hussey was employed on a probationary basis and that the County need not comply with the procedural requirements of § 59.21(8)(b) to discharge a probationary officer. Hussey argues that the procedural requirements of § 59.21(8)(b) unambiguously apply to probationary officers. Because the employment terms of a probationary law enforcement officer are governed by § 165.85(4), STATS.,[2] and the parties' collective bar-

---

[1] Section 59.21(8)(b), STATS., provides in part:

1.  [W]henever the sheriff . . . believes that a deputy has acted so as to show the deputy to be incompetent to perform the duties of deputy sheriff or to have merited suspension, demotion or dismissal, the sheriff . . . shall report in writing to the grievance committee setting forth specifically the complaint against the deputy, and . . . may suspend or demote the officer at the time such complaint is filed.

2.  The grievance committee shall forthwith notify the accused officer of the filing of the charges and on request furnish the accused officer with a copy of the same.

3.  The grievance committee shall, if the officer requests a hearing, appoint a time and place for the hearing of the charges . . . .

[2] Section 165.85(4)(b), STATS., provides in part:

No person may be appointed as a law enforcement or tribal law enforcement officer, except on a temporary or probationary basis, unless the person has satisfactorily completed a preparatory program of law enforcement training approved by the board and has been certified by the board as being qualified to be a law enforcement or tribal law enforcement officer.

16

gaining agreement, not by § 59.21(8)(b), we reject Hussey's argument and affirm the judgment.[3]

The facts are undisputed. Hussey began his employment as a sheriff's deputy with Outagamie County on April 11, 1994. The collective bargaining agreement between the County and the Outagamie County Professional Police Association governed the terms of Hussey's employment. The agreement provided that law enforcement officers subject to its terms were on probationary status for the first twelve months of employment and that Outagamie County can discharge probationary officers "at the discretion of the County without regard to cause and without regard to any appeal or grievance procedure."

The County alleges that during Hussey's tenure as a probationary officer, Hussey acted improperly on several occasions. Specifically, Hussey failed to secure proper proof at a crime scene, failed to file the proper documentation several times and acted unprofessionally toward a district attorney. The most serious incident occurred on February 12, 1995, when Hussey was assigned to accompany a state prisoner from Outagamie County to a hospital in Madison for emergency treatment. When they arrived in Madison, there was some confusion as to who would take custody of the inmate. Hussey informed a corrections officer that someone else must take custody of the prisoner within

---

[3] Hussey also argues that the circuit court erred by holding that his claim was barred by § 893.80(1), STATS., because he failed to provide the County with timely notice of his claim. Our decision that the County was not required to follow the procedures in § 59.21, STATS., to discharge Hussey disposes of the appeal. If a decision on one point disposes of the appeal, we will not consider other issues raised. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

thirty minutes or Hussey would leave the prisoner unguarded. Hussey hung up the telephone on his superior when he told Hussey that he was not to leave the prisoner until another officer came to relieve him.

A short time later, the County decided to discharge Hussey because of his record of poor performance and insubordination.[4] Hussey filed a complaint against the County seeking an injunction requiring his reinstatement with back pay until the County complied with the procedural requirements of § 59.21(8)(b), STATS. Both parties moved for summary judgment. The circuit court granted the County's motion.

We review summary judgment de novo. *Park Bankcorp. v. Sletteland*, 182 Wis. 2d 131, 140, 513 N.W.2d 609, 613 (Ct. App. 1994). When reviewing summary judgment, we apply the standard set forth in § 802.08(2), STATS., in the same manner as the circuit court. *Kreinz v. NDII Secs. Corp.*, 138 Wis. 2d 204, 209, 406 N.W.2d 164, 166 (Ct. App. 1987). Where, as here, both parties file countermotions for summary judgment, and neither argues that factual disputes bar the other's motion, the facts are deemed stipulated, leaving the court with issues of law. *Lucas v. Godfrey*, 161 Wis. 2d 51, 57, 467 N.W.2d 180, 183 (Ct. App. 1990).

The collective bargaining agreement unambiguously provided that the County hired Hussey as a probationary officer. In *Kaiser v. Board of Police & Fire Commr's*, 104 Wis. 2d 498, 311 N.W.2d 646 (1981), our supreme court held that § 165.85(4)(b), STATS., governs the terms of employment for probationary city police officers, so that cities do not need to follow the proce-

---

[4] In circuit court, the County argued that Hussey voluntarily resigned. For purposes of this appeal, the County concedes that Hussey was terminated.

dures in § 62.13(5), STATS.,[5] to discharge probationary officers. The plaintiff in *Kaiser*, 104 Wis. 2d at 501, 311 N.W.2d at 648, argued that § 62.13(5) entitled him to a list of the reasons for his termination and a hearing. The *Kaiser* court held that when an officer is hired as a probationary employee under § 165.85(4)(b), the terms of the collective bargaining agreement regarding probationary officers govern the terms of employment, § 62.13(5) does not. The bargaining agreement in *Kaiser* stated that probationary employees could not make a claim or grievance with respect to a discharge during the probation period. *Id.* at 502, 311 N.W.2d at 648.

In *Kaiser*, the court reasoned that § 165.85(4)(b), STATS., specifically governed probationary officers, so the general provisions of § 62.13(5), STATS., governing the generic class of all police officers who were "subordinates," did not apply. *Id.* at 503, 311 N.W.2d at 649. The court further based its holding on the grounds that "[t]here is no doubt that the use of a probationary period is an excellent means of examining candidates and is well-suited to securing the best service available. It enables the board to better evaluate a potential officer's skill and character. Probation is a continuation

---

[5] Section 62.13(5), STATS., provides in part:

(c)   A subordinate may be suspended for just cause . . . by the chief or the board as a penalty. The chief shall file a report of such suspension with the commission immediately upon issuing the suspension. . . . If the subordinate suspended by the chief requests a hearing before the board, the chief shall be required to file charges with the board upon which such suspension was based.

(d)   Following the filing of charges in any case, a copy thereof shall be served upon the person charged. The board shall set date for a hearing . . . . [B]oth the accused and the complainant may be represented by an attorney and may compel the attendance of witnesses by subpoenas . . . .

of the hiring process." *Id.* at 504, 311 N.W.2d at 649. We conclude that the reasoning of *Kaiser* controls this case, so that the County may discharge probationary deputies pursuant to the terms of its collective bargaining agreement, regardless of § 59.21(8)(b), STATS.

Hussey attempts to distinguish *Kaiser* on the grounds that the statutory section at issue in that case, § 62.13(5), STATS., governed "disciplinary actions," whereas the statutory section at issue in this case, § 59.21(8)(b), STATS., governs instances when the sheriff terminates a deputy on grounds of incompetence. Hussey claims this distinction is significant because the supreme court in *Kaiser* noted that § 62.13(5) did not apply because "Kaiser was not disciplined; he was terminated as not suited for service as a police officer." *Id.* at 503, 311 N.W.2d at 649. This sentence in *Kaiser* is actually an inaccurate characterization of the statute. A reading of § 62.13(5) reveals that among the disciplinary choices are suspension, demotion or removal. *See* § 62.13(5)(e).

We conclude that Hussey fails to meaningfully distinguish *Kaiser*. The distinction he notes does not affect the rationale that § 165.85(4)(b), STATS., specifically controls the employment status of probationary employees to the exclusion of general statutes. In *Kaiser*, our supreme court concluded that § 62.13(5), STATS., was a general statute because it governed all "subordinates," a generic term that included all police officers. *Id.* at 503, 311 N.W.2d at 649. Similarly, we conclude that § 59.21(8)(b), STATS., is a general provision because it governs all "deputy sheriffs."

Hussey contends that the rationale of *Kaiser*, that § 165.85, STATS., governs because it is more specific, does not apply in this case. First, Hussey argues that § 59.21(8)(b), STATS., is more specific than

20

§ 165.85(4)(b), because § 59.21(8)(b) delineates specific procedures for termination whereas § 165.85(4)(b) does not address the issue of discharge. Next, Hussey argues the two statutes do not deal with the same subject matter in that § 165.85(4)(b) applies to hiring officers and § 59.21(8)(b) applies to the procedures required to discharge an officer. Analogous arguments could have been made with respect to § 62.13(5), STATS., in *Kaiser*. By reaching its decision, our supreme court implicitly rejected these arguments.

We also note that the reasoning in *Kaiser* that a probationary period is "an excellent means of examining candidates and is well-suited to securing the best service available" in the area of law enforcement applies here. *Id.* at 504, 311 N.W.2d at 649. Hussey offers no reasonable basis to persuade us that the use of probationary status is less useful in hiring County deputies than in hiring city police officers.

Finally, Hussey argues that the clause in the collective bargaining agreement, which states that probationary employees can be terminated without a grievance procedure, is void because it violates § 59.21(8)(b), STATS. Because we conclude that that section does not impose procedural requirements for the termination of probationary employees, we reject Hussey's argument.

In sum, Hussey fails to distinguish *Kaiser*. Per *Kaiser*, the collective bargaining agreement controls the terms of Hussey's employment, and, under the agreement, he can be discharged without following the procedures of § 59.21(8)(b), STATS.

*By the Court.*—Judgment affirmed.